IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TRACI D. CUMMINS                                                              PLAINTIFF

V.                                      CIVIL ACTION NO. 1:15-CV-102-SA-DAS

CURO HEALTH SERVICES, LLC
d/b/a/ SOUTHERNCARE, INC.                                         DEFENDANT

MEMORANDUM OPINION

Traci Cummins filed her Complaint [1] in this Court on June 1, 2015 against her former employer SouthernCare, Inc.[1] Cummins thereafter filed her Amended Complaint [27] alleging that SouthernCare violated her rights protected by the Americans with Disabilities Act and the Family Medical Leave Act. SouthernCare filed a Motion for Summary Judgment [54] requesting judgment in its favor on all of Cummins' claims. Cummins responded [58] and SouthernCare replied [60] making this motion ripe for review.

*Factual and Procedural Background*

Cummins is a Registered Nurse. SouthernCare is hospice care provider. Around June of 2013 Cummins was hired by SouthernCare's Clinical Director Le Downing as a Case Manager. Le Downing was Cummins' direct supervisor. After approximately one month, Downing moved Cummins from part-time to full-time. Cummins' duties included traveling to patients' homes and to care facilities to provide direct care, supervising nurse aides, and occasionally training other nurses.

In the Fall of 2013, Cummins applied for an open position in SouthernCare's sales department. Community Relations Director Scott Burroughs was in charge of the sales

---

[1] Defendant Curo Health Services, LLC acquired SouthernCare in June of 2014. For purposes of clarity and consistency the sole Defendant in this case will be referred to as SouthernCare.

department and interviewed Cummins.[2] Burroughs hired another candidate for the open sales position. Cummins continued working as a Case Manager. The person that Burroughs hired for the sales position did not work out, and the position was open again in January of 2014. Cummins continued to express her interest in the position to Burroughs. Although the two had some informal discussions about the sales position, Burroughs did not formally re-interview Cummins, and did not hire anyone to fill the position.

In February of 2014, Cummins injured her shoulder while treating a patient. Because of her injury, Cummins was restricted from lifting more than ten pounds. SouthernCare placed Cummins on light duty and reassigned her to work in the office. Cummins continued to work in the office for several months. In June of 2014 SouthernCare was acquired by Curo Health Services.

Cummins continued to request an interview for the sales position that remained open. On July 14, 2014, Cummins again approached Burroughs and requested an interview. According to Cummins, Burroughs gave her a brief and informal interview. Later that day, Burroughs and Downing laid Cummins off.

In her Amended Complaint, Cummins alleges that SouthernCare fired her because of her physical disability and refused to provide her with a reasonable accommodation in violation of the Americans with Disabilities Act (ADA). Cummins further alleges that SouthernCare failed to provide her with notice and opportunity for leave as required by the Family Medical Leave Act (FMLA).

In its Motion for Summary Judgment, SouthernCare argues that Cummins does not qualify as an individual with a disability under the ADA, that Cummins never requested an

---

[2] It appears from the record that the care and sales departments were mostly independent and Burroughs and Downing were laterals with neither subordinate to the other. However, Burroughs did have some participation in the Plaintiff's layoff.

accommodation, that SouthernCare provided an accommodation until it could no longer do so without creating undue hardship, and that Cummins was not fired because of her disability but was instead terminated as part of a general reduction in force.

As to Cummins' claim brought under the FMLA, SouthernCare argues that Cummins never requested leave and that even if she had it was not available to her. SouthernCare requests that the Court enter judgment in its favor on all of the Plaintiff's claims.

*Standard of Review*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Disability Discrimination*

The ADA prohibits discrimination on the basis of an employee's disability. Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures [. . .] discharge of employees, [. . .] and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a).

Where, as here, the Plaintiff produces no direct evidence of discrimination, but instead relies on circumstantial evidence to sustain her case, the Court applies the familiar *McDonnell Douglas* burden-shifting framework to determine whether she can sustain her claim. *Demarce v. Robinson Prop. Grp. Corp.*, 642 F. App'x 348, 352 (5th Cir. 2016). To establish a *prima facie* case of discrimination the plaintiff must show: "(1) that she has a disability; (2) that she was qualified for the job; [and] (3) that she was subject to an adverse employment decision on account of her disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (adopting the specific elements of a *prima facie* case as outlined in *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)).

If the Plaintiff successfully establishes a *prima facie* case of discrimination, the burden shifts to SouthernCare to articulate a legitimate, non-discriminatory reason for the adverse employment action. *LHC Grp.*, 773 F.3d at 694. If SouthernCare articulates a reason, the burden then shifts back to the Plaintiff to show that the proffered reason was merely pretext. *Id*.

As to the first prong, for purposes of summary judgment, SouthernCare concedes that the Plaintiff has a disability. Moving to the second prong, SouthernCare argues that the Plaintiff was not qualified for the job. A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such

individual holds or desires." 42 U.S.C. §12111(8). To demonstrate qualification, the Plaintiff must show either that "(1) she could perform the essential functions of the job in spite of her disability, or (2) that a reasonable accommodation of her disability would have enabled her to perform the essential functions of the job." *Demarce v. Robinson Prop. Grp. Corp.*, No. 2:12-CV-34-SA, 2013 WL 6528843, at *4 (N.D. Miss. Dec. 12, 2013), *aff'd,* 642 F. App'x 348 (citing *Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir. 1999); *see Appel v. Inspire Pharms., Inc.*, 428 F. App'x 279, 284 (5th Cir. 2011) (stating "an employee who cannot perform essential job requirements, even with accommodation, is not a qualified person with a disability.")).

SouthernCare argues that the Plaintiff was not qualified to perform the duties of an RN Case Manager because of her ten-pound lifting restriction. According to SouthernCare, one aspect of the RN Case Manager job is providing physical assistance to patients including helping them move and turn in order to properly examine them. SouthernCare argues that Cummins lifting restriction prevented her from performing this essential function. The Plaintiff argues that she could have performed all of the essential functions of the job with a reasonable accommodation such as adjusting her patient list or having an aide accompany her on certain patient visits. SouthernCare responds that such an accommodation is unreasonable. The Plaintiff also argues that she was qualified for the open sales position, and could have been reassigned.

The ADA defines "reasonable accommodations" to include: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

Although SouthernCare asserts that providing the accommodation necessary in the

Plaintiff's case was unreasonable, it fails to highlight any specific facts or reasons to support its argument. The Plaintiff's argument regarding an accommodation closely resembles the Act's definition. It is unclear based on the summary judgment record whether lifting was indeed an essential function of the RN Case Manager position, and if so whether the Plaintiff could have performed all of the essential functions of the position with a reasonable accommodation.

As to the reasonability of reassignment to the vacant sales position, "[a] disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received previously." *Demarce*, 642 F. App'x at 354; *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316 (5th Cir.2007). It is unclear based on the record in this case whether reassignment to the vacant sales position would indeed have been a promotion for the Plaintiff.

In addition, SouthernCare engaged in discussion and accommodation of the Plaintiff's disability when they moved her to light duty. "Once an accommodation is requested, an employer must engage in the 'interactive process,' or a flexible dialogue, with the employee with the goal of finding an appropriate accommodation for the limitation." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) (citing *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009)). Based on the record in this case, it appears that SouthernCare terminated any interactive process or flexible dialogue with the Plaintiff when they fired her.

Therefore, the Court finds that a material fact question exists as to the Plaintiff's qualification particularly in regard to the reasonableness and necessity of an accommodation. Based on the information in the record, a reasonable jury could conclude that the Plaintiff was qualified, establishing the second prong of her *prima facie* case.

To establish the third and final prong of her *prima facie* case, the Plaintiff must show that she was subject to an adverse employment decision on account of her disability. *LHC Grp.*, 773 F.3d at 697. SouthernCare argues that the Plaintiff was fired as part of a companywide realignment following a change in ownership, and that she was no longer qualified for the RN Case Manger position because she could not perform the essential functions of the job. In response, the Plaintiff contends that this argument essentially admits that SouthernCare fired the Plaintiff on account of her disability, because her disability was the very reason that SouthernCare did not consider her qualified. The Court agrees.

Based on the evidence in the record, a reasonable jury could conclude that the Plaintiff has a disability, that she was qualified for the job, and that she was subject to an adverse employment decision on account of her disability. The Plaintiff has established a *prima facie* case of discrimination.

Because the Plaintiff established a *prima facie* case of discrimination, the burden shifts to SouthernCare to articulate a legitimate, non-discriminatory reason for firing her. *LHC Grp.*, 773 F.3d at 694. According to SouthernCare, the Plaintiff was fired as part of a companywide realignment following a change in ownership, and that the Plaintiff's temporary light duty position was eliminated. SouthernCare also argues that the Plaintiff was "considered for retention" but that she scored the lowest on an "objective" performance matrix and was therefore eliminated as part of a general reduction in force.

Because SouthernCare's burden relative to their legitimate non-discriminatory reason for the firing is one of production only, the burden shifts back to the Plaintiff to show that SouthernCare's proffered reason for firing her is mere pretext. *LHC Grp.*, 773 F.3d at 694. The Plaintiff must present sufficient evidence to create a genuine issue of material fact that

SouthernCare's proffered reason is not true, but is instead a pretext for discrimination. *Id.* at 702 (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

As evidence of pretext, the Plaintiff first asserts that the performance matrix was flawed and not objective. Clinical Director Downing completed the matrix. The performance matrix is made up of five weighted categories which are to be scored with a numerical value (Rate) of one through four. The Rate is then multiplied by the assigned weight to get a score for each category. The scores are then added together to get a Total Score. The higher the Total Score the better. The categories and weights appear as follows:

Performance Evaluation Score – 30%

- Score from most recent annual evaluation

Length of Service – 30%

- 0-1 years = 1, 1-3 years = 2, 3-5 years = 3, 5+ years = 4

Disciplinary Warnings – 10%

- Final warning = 1, Written reprimand =2, Verbal reprimand = 3

Attendance – 5%

- Poor = 1, Borderline = 2, Good = 3, Exceptional = 4

HCHB[3] Proficiency – 25%

- Level of skill with HCHB 0-4

It is undisputed that the Plaintiff's total score is the lowest among all seven scored employees. However, even a cursory review of the performance matrix reveals that it was neither reliable nor objective. No scores were recorded in the Rate (1-4) column, and Downing recorded the final scores in each category without weighting them as directed by the scoring guidelines. Instead, Downing assigned overwhelming weight to the performance evaluation category, as

---
[3] It appears from the record that HCHB is the patient record keeping system that SouthernCare used.

much as 90% of the total score in some cases. In addition, Downing did not have an annual evaluation for several employees including the Plaintiff. Instead, Downing created a performance evaluation score for the Plaintiff extempore as she completed the matrix. Downing has no written explanation, basis, or criteria for the Plaintiff's performance category score. There is no objective basis, only Downing's subjective opinion at that moment, for the Plaintiff's assigned performance score which is substantially lower than all the others.

As further evidence of pretext, the Plaintiff argues that as a result of the performance matrix only two employees were fired, and both had "health problems." There is also some evidence in the record that SouthernCare hired as many as four new RNs after firing the two with health issues.

At summary judgment, "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's *prima facie* case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." *LHC Grp.*, 773 F.3d at 702 (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

The Court finds that the Plaintiff has presented sufficient evidence from which a reasonable jury could conclude that SouthernCare fired the Plaintiff because of her disability in violation of the ADA. Summary judgment is therefore inappropriate on this claim. *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548. SouthernCare's Motion for Summary Judgment is denied as to the Plaintiff's claim brought under the ADA for discrimination on the basis of disability.

*Failure to Accommodate*

Distinct from a claim that an adverse employment action was motivated by the employee's disability, an employer's failure to reasonably accommodate a disabled employee

may constitute a violation of the ADA. *Dillard v. City of Austin, Texas*, 837 F.3d 557, 562 (5th Cir. 2016) (citing *LHC Grp.*, 773 F.3d at 703 n. 6). "This comes from the ADA's definition of discrimination, which includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee. . . .'" *Dillard*, 837 F.3d at 562 (quoting 42 U.S.C. §12112(b)(5)(A)).

However, "[t]he ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *Demarce*, 642 F. App'x at 354 (citing *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (internal citation omitted). Thus, "[a] disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received previously." *Demarce*, 642 F. App'x at 354; *Jenkins*, 487 F.3d at 316. Ultimately, to prevail on a failure to accommodate claim, a plaintiff must prove: "(1) [she] is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Demarce*, 642 F. App'x at 354 (quoting *Feist v. La. Dep't of Justice*, 730 F.3d 450, 452 (5th Cir. 2013)).

The Fifth Circuit has held that "ADA compliance requires an employer to engage in an interactive process with an employee who requests an accommodation for her disability to ascertain what changes could allow her to continue working." *Dillard*, 837 F.3d at 562 (citing *LHC Grp.*, 773 F.3d at 700). "In other words, employer and employee must work together in good faith, back and forth, to find a reasonable accommodation." *Dillard*, 837 F.3d at 562 (citing *Chevron Phillips*, 570 F.3d at 621–22. The Fifth Circuit has further characterized this process, as "ongoing" and "reciprocal," "not one that ends with the first attempt at accommodation, but one that continues when the employee asks for a different accommodation or where the employer is

aware that the initial accommodation is failing and further accommodation is needed." *Dillard*, 837 F.3d at 562-63 (internal quotations omitted).

Although a failure to accommodate is a distinct claim, the Court notes that as a practical matter in this case there is a substantial overlap of facts and evidence between the Plaintiff's discrimination and accommodation claims. As noted above, Defendant does not contend that the Plaintiff's requested accommodations would not have worked, but instead argues that they were not reasonable, and would have caused undue hardship. "[A] reasonable accommodation is 'a method of accommodation that is reasonable in the run of cases, whereas the undue hardship inquiry focuses on the hardships imposed by the plaintiff's preferred accommodation in the context of the particular employer's operations.'"*Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996).

Thus, in assessing whether such an accommodation poses an undue hardship, the Defendant bears the burden and the court should consider factors such as: "the nature and the cost of the accommodation, the size of the facility and the business entity involved in terms of financial resources, personnel, and geography; and the type of operations including composition, structure and function." *Riel*, 99 F.3d at 682 (internal quotations omitted).

As above, the Court again determines that there is a genuine dispute of material fact as to whether SouthernCare engaged in the interactive process, and whether the Plaintiff's requested accommodations were reasonable. Although Defendant alleges that such requests would have imposed an undue hardship, it provides no competent evidence in support of that affirmative defense. *Riel*, 99 F.3d at 684; *Dillard*, 837 F.3d at 562–63 (stating "the interactive process is a two-way street; it requires that employer and employee work together, in good faith, to ascertain a reasonable accommodation.").

For these reasons, SouthernCare's Motion for Summary Judgment is denied as to the Plaintiff's claim brought under the ADA for a failure to accommodate.

*Family Medical Leave Act*

The Plaintiff also alleges that SouthernCare violated her rights protected by the Family Medical Leave Act (FMLA). Specifically, the Plaintiff claims that although she was eligible for FMLA leave when she was terminated SouthernCare did not offer it to her.

It is undisputed that SouthernCare complied generally with the notice requirements of the FMLA, that the Plaintiff was on notice that as an employee she was eligible for FMLA leave, and that the Plaintiff never requested leave.

Any "employee giving notice of the need for FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice." 29 C.F.R. § 825.301(b). The FMLA provides protection where notice "is sufficient to reasonably apprise [the employer] of the employee's request to take time off for a serious health condition." *Ray v. United Parcel Serv.*, 587 F. App'x 182, 189 (5th Cir. 2014).

In the instant case, there is no evidence in the record that the Plaintiff was seeking leave of any kind. There is nothing in the record to support the conclusion that SouthernCare was on notice that the Plaintiff wanted leave. There was no request. The Plaintiff has not cited, nor is the Court aware of, any cases finding an FMLA violation when an employee never requested leave of any kind. *See e.g. Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998) (affirming finding that employee's *request* for time off insufficient to reasonably apprise employer that request was made under FMLA); *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 760 (5th Cir. 1995) (finding employee's *notification* to her supervisor of her need to miss work for medical reasons sufficient even though she did not expressly invoke FMLA); *Rynders*

*v. Williams*, 650 F.3d 1188, 1196 (8th Cir. 2011) (finding employee's *request* sufficient after he informed his Department of his exact medical condition, his debilitating symptoms resulting from the condition, the likelihood that he would need to take intermittent leave in the future to cope with the condition and receive treatment, and specifically referenced the FMLA and repeatedly requested information regarding how to properly take leave).

As alleged, the Plaintiff's FMLA claim is her failure to accommodate claim recast. The essence of the Plaintiff's argument is that she was eligible for FMLA leave, and that SouthernCare should have provided it to her instead of firing her. Because she was on notice that she qualified for FMLA leave as an employee, and never requested leave of any kind, she has not alleged the necessary facts or brought forth sufficient evidence to substantiate a claim under the FMLA. For these reasons, SouthernCare's Motion for Summary Judgment is granted as to the Plaintiff's claim brought under the FMLA.

*Conclusion*

For all of the reasons stated above, SouthernCare's Motion for Summary Judgment [54] is GRANTED in part, and DENIED in part. SouthernCare's motion is granted on the Plaintiff's claim brought under the FMLA, and denied as to both of the Plaintiff's claims brought under the ADA.

So ORDERED on this the 3rd day of February, 2017.

    /s/ Sharion Aycock  
UNITED STATES DISTRICT JUDGE